J-S47002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

DANIEL HALDAMAN, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GERDA W. HALDAMAN

            Appellant

            v.

EATON CORPORATION, AS SUCCESSOR-IN-INTEREST TO CUTLER-HAMMER, INC.

            Appellee

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1170 EDA 2012

Appeal from the Judgment Entered May 23, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2011, No. 4493

DANIEL HALDAMAN, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GERDA W. HALDAMAN

            Appellant

            v.

P & H MINING EQUIPMENT F/K/A HARNISCHFEGER CORPORATION

            Appellee

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1172 EDA 2012

Appeal from the Judgment Entered May 23, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2011, No. 4493

DANIEL HALDAMAN, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GERDA W. HALDAMAN

            Appellant

            v.

IN THE SUPERIOR COURT OF PENNSYLVANIA

READING CRANE & ENGINEERING

              Appellee                 No. 1173 EDA 2012

Appeal from the Judgment Entered May 23, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2011, No. 4493

| DANIEL HALDAMAN, AS PERSONAL RPRESENTATIVE FOR THE ESTATE OF GERDA W. HALDAMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MORGAN ENGINEERING F/K/A MORGAN CRANE | |
| Appellee | No. 1174 EDA 2012 |

Appeal from the Judgment Entered May 23, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2011, No. 4493

| DANIEL HALDAMAN, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GERDA W. HALDAMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| CBS CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION | |
| Appellee | No. 1175 EDA 2012 |

Appeal from the Judgment Entered May 23, 2012
In the Court of Common Pleas of Philadelphia County

Civil Division at No(s): February Term, 2011, No. 4493

| | |
|---|---|
| DANIEL HALDAMAN, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF GERDA W. HALDAMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GENERAL ELECTRIC COMPANY | |
| Appellee | No. 1176 EDA 2012 |

Appeal from the Judgment Entered May 23, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2011, No. 4493

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY MUNDY, J.:                    **FILED OCTOBER 03, 2014**

In these consolidated appeals, Appellant, Daniel Haldaman, personal representative of the estate of Gerda W. Haldaman, deceased (Decedent), and plaintiff in the underlying asbestos mass tort litigation,[1] appeals from the final judgment entered May 23, 2012,[2] which also rendered final the trial

---

[1] During the pendency of this appeal, original Appellant, Gerda W. Haldaman died on July 28, 2013.  This Court granted the application for substitution of personal representative pursuant to Pennsylvania Rule of Appellate Procedure 502 on October 24, 2013.

[2] In Appellant's notices of appeal, Appellant purports to appeal from the March 12, 2012 order entering the jury verdict in favor of the last remaining defendant in the case, CertainTeed Corporation (CertainTeed is not a subject of these appeals).  In a civil case, an appeal from the entry of a verdict is premature.  *Taxin v. Shoemaker*, 799 A.2d 895, 860 (Pa. Super. 2002), *citing* *Weiser v. Bethlehem Steel Corp.*, 508 A.2d 1241, 1244 n.6 (Pa.

*(Footnote Continued Next Page)*

court's earlier orders granting summary judgment to each respective Appellee, Eaton Corporation, as successor in interest to Cutler-Hammer, Inc. (Eaton); Kentile Floors Inc. (Kentile); P & H Mining Equipment, f/k/a Harnischfeger Corporation (P&H); Reading Crane & Engineering (Reading); Morgan Engineering, f/k/a Morgan Crane (Morgan); CBS Corporation, f/k/a Westinghouse Electric Corporation (CBS Corp.); and General Electric Company (GE). After careful review, we affirm based on the thorough and well-supported opinion of the Honorable Sandra Mazer Moss.

We summarize the procedural history of this case, as gleaned from the certified record, as follows. The instant action was commenced by complaint, filed on March 2, 2011, by Decedent against the various defendants, alleging she was exposed to asbestos dust while laundering her husband, Ray Haldaman's[3] work clothes, the asbestos dust was generated by defendants' products, and that the alleged exposure caused her to contract mesothelioma and interstitial fibrosis. An amended complaint was

_(Footnote Continued)_ ————————

Super. 1986). Instantly, in its order denying Appellant's post-trial motions, the trial court entered final judgment in this case. Trial Court Order, 5/23/12, at 1. "[W]here a trial court denies a party's post-trial motions _and_ unequivocally enters judgment in the same order, that order is immediately appealable and an appeal should be filed within thirty days of its entry on the trial court docket." **Id.** (emphasis in original); **cf.** Pa.R.C.P. 227.4(2) (directing the prothonotary to enter judgment upon praecipe **unless** the court itself has entered judgment). The caption has been adjusted accordingly.

[3] Ray Haldaman died on April 3, 1996, prior to the commencement of the instant action. N.T., 5/19/11, Decedent's Deposition, at 10.

filed on August 9, 2011, naming additional defendants. The case was assigned to the Philadelphia Court of Common Pleas' Mass Tort Program. Upon conclusion of discovery, all of the defendants implicated in this appeal filed respective motions for summary judgment. Between February 13, 2012, and February 21, 2012, the trial court granted each of Appellees' motions.[4]

The case proceeded to a jury trial with CertainTeed as the one remaining defendant, commencing on March 7, 2012.[5] The jury returned a verdict in favor of CertainTeed that was entered on March 13, 2012. Appellant filed timely post-trial motions on March 22, 2012. On April 19, 2012, Appellant filed seven notices of appeal challenging the judgment relative to each respective Appellee. On April 23, 2012, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on May

_____

[4] Eaton's motion, filed on December 23, 2011, was granted on February 15, 2012. Kentile's motion, filed on December 22, 2011, was granted on February 21, 2012. P&H's motion, filed on December 23, 2011, was granted on February 21, 2012. Reading's motion, filed on December 20, 2011, was granted on February 13, 2012. Morgan's motion, filed on December 22, 2011, was granted on February 17, 2012. CBS Corp.'s motion, filed on December 22, 2011, was granted on February 17, 2012. GE's motion, filed on December 22, 2011, was granted on February 21, 2012.

[5] Other defendants were released from the case by stipulation of the parties or by settlement.

10, 2012.[6] On May 23, 2012, the trial court denied Appellant's post-trial motions and ordered final judgment to be entered in the case.[7] Meanwhile, also on May 23, 2012, this Court, acting *sua sponte*, consolidated the instant appeals. During the pendency of the consolidated appeal, this Court received a notice of suggestion of bankruptcy of Kentile on December 17, 2012, and duly stayed all proceedings on December 27, 2012. On

---

[6] In its appellee brief, Morgan argues Appellant's issues on appeal should be deemed waived because his Rule 1925(b) statement is insufficiently clear and at variance with the question on appeal contained in Appellant's brief. Morgan's Brief at 9. In his 1925(b) statement, Appellant noted the trial court had not provided a written explanation of its reasons for granting the several motions for summary judgment. Appellant's Rule 1925(b) Statement, 5/10/12, at 1; **See also** Pa.R.A.P. 1925(b)(4)(vi) (providing, Appellant "shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms[,]" and that "[i]n such a case, the generality of the Statement will not be grounds for finding waiver"). Appellant then advanced in general terms his allegation that the trial court erred because the evidence demonstrated "Mr. Haldaman was in proximity to the products at issue on a regular and frequent basis." Appellant's Rule 1925(b) Statement, 5/10/12, at 1. The trial court's opinion explained its determination that Appellant failed to present any material fact sufficient to state a *prima facie* case for Appellant's exposure to asbestos dust from Appellees' products. In his Brief, Appellant poses the question of whether this determination is correct in light of the factual record, which we deem is fairly suggested by her Rule 1925(b) statement. Accordingly, we decline to find waiver on the bases asserted by Morgan.

[7] Having been filed before the final entry of judgment, Appellant's notice of appeal was premature. **See** Pa.R.A.P. 301. However, as noted, final judgment was subsequently entered, giving us jurisdiction over this appeal pursuant to Rule 905(a)(5), which provides that "a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5); **accord Am. and Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.,** 948 A.2d 834, 842 n.1 (Pa. Super. 2008) (under Rule 905(a)(5), subsequent entry of judgment perfected premature appeal), *affirmed*, 2 A.3d 526 (Pa. 2010).

September 19, 2013, Appellant filed a praecipe for discontinuance of his appeal involving Kentile, whereupon this Court vacated the stay as to the remaining Appellees in this consolidated appeal on April 14, 2014, and briefing was thereafter completed.

On appeal, Appellant raises the following issue for our review.

> Whether the [s]ummary [j]udgment in [f]avor of Appellees, P&H Mining Equipment, Inc. was improperly granted in this case, when the entire evidentiary record showed the following: Mrs. Haldaman's secondary exposure to asbestos occurred because her husband worked at Bethlehem Steel and (1) the testimony of Mr. Weiss and others establishes he was exposed to asbestos from Kentile when replacing flooring; (2) the testimony of others establishes he was exposed to asbestos from multiple crane manufacture's [sic] crane and replacement parts; (3) the testimony of Mr. Potteiger and others establishes Mr. Haldaman was exposed to asbestos from multiple crane brake manufacturers?

Appellant's Brief at 10.[8]

_____

[8] P&H has not filed a brief in this appeal. Reading, CBS Corp., and GE contend in their appellate briefs that this Court should quash this appeal due to a variety of alleged deficiencies in Appellant's brief. Reading's Brief at 13; CBS Corp. and GE's Combined Brief at 11. Specifically, these Appellees claim Appellant's brief fails to conform to the Rules of Appellate Procedure in that Appellant's question on appeal fails to articulate a claim against them, his statement of the case section is argumentative, fails to include a summary of argument, contains insufficiently developed argument, and fails to append the trial court opinion. Reading's Brief at 13-20; CBS Corp. and GE's Combined Brief at 11-16; *see also* Pa.R.A.P. 2111, 2116-2119. We acknowledge that Appellant's brief is not wholly compliant with the rules, for example, it places much of the factual analysis relevant to its argument in its statement of the case section, and the question presented is unartfully drafted. However, because these defects do not impede our ability to conduct appellate review, we decline to find waiver or quash the appeal. We
*(Footnote Continued Next Page)*

"[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." ***Petrina v. Allied Glove Corp.***, 46 A.3d 795, 797-798 (Pa. Super. 2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." ***Barnes v. Keller***, 62 A.3d 382, 385 (Pa. Super. 2012) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." ***Id.*** The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2.

> **Rule 1035.2. Motion**
>
> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
>> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>>
>> (2) if, after the completion of discovery relevant to the motion, including the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

also note that Appellant's brief was filed before the discontinuance of the appeal involving Kentile. Hence, the portion of Appellant's question on appeal referencing Kentile is moot.

production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [his] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

*Glaab v. Honeywell Intern., Inc.*, 56 A.3d 693, 696 (Pa. Super. 2012), *quoting* *Chenot v. A.P. Green Servs., Inc.*, 895 A.2d 55, 60–62 (Pa. Super. 2006).

Instantly, the basis upon which the trial court granted each Appellee's motion for summary judgment was the failure of Appellant to provide *prima facie* evidence of exposure by Ray Haldaman, and by extension Decedent, to Appellees' asbestos containing products sufficient to satisfy the frequency,

regularity, proximity factors of **Eckenrod v. GAF Corp.**, 544 A.2d 50 (Pa. Super. 1988), *appeal denied*, 553 A.2d 968 (Pa. 1988) and its progeny. "Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment by showing circumstantial evidence depends upon the frequency of the use of the product and the regularity of plaintiff's employment in proximity thereto." **Id.** at 53 (citations omitted).

We recognize that "lay testimony can support a claim of exposure to asbestos." **Donoughe v. Lincoln Elec. Co.**, 936 A.2d 52, 72 (Pa. Super. 2007). "[A]bsent [] direct evidence, a plaintiff may rely on circumstantial evidence of exposure, namely, the frequency of the use of the product and the regularity of his or her employment in proximity thereto." **Id.** at 62 (internal quotation marks, brackets, and citations omitted).

> There is no requirement that a plaintiff who suffers an asbestos related injury must establish the specific role played by each individual asbestos fiber within the body. Instead, in order to make out a *prima facie* case, it is well established that the plaintiff must present evidence that he inhaled asbestos fibers shed by the specific manufacturer's product. A plaintiff must, however, establish more than the mere presence of asbestos in the workplace. The plaintiff must establish that he worked in the vicinity of a specific manufacturer's product.
>
> The nexus between an asbestos product and plaintiff may be established by direct and circumstantial evidence. The testimony of a witness with knowledge relating to the plaintiff's workplace exposure to an asbestos-containing product is admissible when probative. Even when the plaintiff is not able to identify specific products manufactured

- 10 -

by particular defendants, the testimony of co-workers is admissible to establish that the plaintiff worked in close proximity to the asbestos products in question.

**Wright v. Allied Signal, Inc.**, 963 A.2d 511, 514-515 (Pa. Super. 2008) (internal quotation marks and citations omitted). Our Supreme Court has described how to apply these frequency, regularity, and proximity factors.

"[The factors] are to be applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product."

**Gregg v. V-J Auto Parts, Co.**, 943 A.2d 216, 225 (Pa. 2007). In **Gregg**, our Supreme Court concluded, "it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." **Id.** at 227.

Instantly, Appellant contends the trial court erred in determining he failed to produce evidence of frequent, regular, and proximate exposure to asbestos dust from Appellees' products. Appellant's Brief at 58. Appellant references the deposition testimony and affidavits of several of Ray Haldaman's co-workers as fulfilling his requirement to present a *prima facie* case of such exposure. **Id.** After careful review of the entire record, we

- 11 -

conclude the trial court did not err or abuse its discretion in determining that all Appellees were entitled to summary judgment, as Appellant failed to establish exposure to asbestos dust from Appellees' products. Trial Court Opinion, 8/22/12, at 5-8. The trial court carefully recounts the specific evidence purported by Appellant to establish Decedent and her husband's exposure to dust from Appellees' products, and explains why such evidence fails to present a material issue of fact about such exposure. ***Id.***

Based on our independent review of the record, we agree. While the evidence viewed in the light most favorable to Appellant tends to show that, in general, asbestos containing products were present in the workplace during Decedent's husband's years of employment, and that he may have at times been around such products when they created dust, there is no evidence of specific exposure to any of Appellees' asbestos containing products. More particularly, we agree that the deposition testimony and affidavits of Ray Haldaman's co-workers, John Weiss, Joseph Anfuso, Brian Gaugler, Michael Carl, John D. Wagner, Theodore Potteiger, Anthony Lubenesky, and Thomas G. Jones, relied on by Appellant, failed to establish an issue of material fact relative to Ray Haldaman's exposure to asbestos dust from any of Appellees' products. Those statements identifying particular products and times, did not mention the presence of Ray Haldaman, and specific references to Ray Haldaman did not place him in proximity of specific asbestos containing products at specific times. All that

Appellant established was general potential exposure from various sources throughout the workplace during Ray Haldaman's employment tenure. No nexus between Ray Haldaman, and by extension Decedent, and any of Appellees' products was established. **See Wright**, **supra**. Accordingly, we adopt the thorough analysis of the law and facts as developed by the Honorable Sandra Mazer Moss in her August 22, 2012 opinion as our own for purposes of further appellate review and affirm the orders granting summary judgment.[9]

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/3/2014

---

[9] Page nine of Judge Mazer Moss's opinion pertains to the appeal from the grant of Kentile's motion for summary judgment. Since that appeal has been withdrawn, we do not adopt that portion of Judge Mazer Moss's opinion as it is now moot.

- 13 -

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## CIVIL TRIAL DIVISION

| | |
|---|---|
| GERDA W. HALDAMAN<br>Plaintiff | FEBRUARY TERM 2011<br>NO. 4493 |
| v. | |
| CBS CORP., f/k/a WESTINGHOUSE<br>ELECTRIC CORP., EATON CORP., as<br>successor in interest to CUTLER-HAMMER,<br>INC., MORGAN ENGINEERING f/k/a<br>MORGAN CRANE, GENERAL ELECTRIC<br>CO., READING CRANE & ENGINEERING,<br>KENTILE FLOORS, INC., P&H MINING<br>EQUIPMENT f/k/a HARNISCHFEGER<br>CORP.<br>Defendants | SUPERIOR COURT NO.<br>1175 EDA 2012<br>1170 EDA 2012<br>1174 EDA 2012<br>1176 EDA 2012<br>1173 EDA 2012<br>1171 EDA 2012<br>1172 EDA 2012 |

## OPINION

Sandra Mazer Moss, J.

Haldaman Vs Allied Signal, Inc. Ftal-OPTLD

August 21, 2012



11020449300523

## I.    BACKGROUND

Plaintiff filed suit on March 2, 2011 alleging asbestos exposure from washing her husband's clothes caused Mesothelioma. Plaintiff appeals this Court's orders dated February 10th, 14th, 16th, and 17th, 2012 granting summary judgment for CBS Corp. f/k/a Westinghouse Electric Corp., Eaton Corp. as successor in interest to Cutler-Hammer Inc., Morgan Engineering f/k/a Morgan Crane, General Electric Co., Reading Crane & Engineering, Kentile Floors Inc., and P&H Mining Equipment f/k/a Harnischfeger Corp. In each 1925(b) statement Plaintiff states the same thing; the grounds on which she

1

claims error are those raised in her Summary Judgment responses. (Plaintiff's 1925(b) statement) For the following reasons, Our Orders should be affirmed.

Plaintiff married Raymond Haldaman (hereinafter "Haldaman") in 1966. (Plaintiff Dep p. 10). From marriage until retirement in 1986, Haldaman worked at Bethlehem Steel in Bethlehem, Pa. (Plaintiff Dep p. 10-11). For those twenty three years Plaintiff laundered his work clothes once a week. (Plaintiff Dep p. 12). She described the laundry as dirty and dusty; full of dirt. (Plaintiff Dep p. 11-12) She laundered the work clothes in a windowless basement. (Plaintiff Dep p. 40-41).

To prove said dust contained asbestos, Plaintiff relies on coworkers' testimony. Product identification witness, John Weiss, testified he began working at Bethlehem Steel as a carpenter's apprentice in 1973. (Weiss Dep 4/8/11 p. 9). He met Haldaman who was already working there on the first day. (Weiss Dep 11/29/11 p. 14) Thereafter they worked together regularly. (Weiss Dep 11/29/11 p. 25). He also testified John Dorward, Andrew Danish, Robert Mertz, Ellsworth Brink, Joseph Anfuso, Roy Morrell, Caril Rieker, Charles Sands and Cyrill Godiska all worked in a carpenters' gang with Mr. Haldaman. (Weiss Dep 11/29/11 p. 24-27). ). One job they performed was building scaffolding for other trades. (Weiss Dep 11/29/11 p. 26-27). Weiss worked in a carpenters' gang with Haldaman at least once a week until 1979. (Weiss Dep 11/29/11 p. 16-17). In 1979 Weiss moved from carpenter to rigger where he worked on cranes which according to his supervisor had asbestos containing brakes. (Weiss Dep 4/8/11 p. 40). He listed Westinghouse, Culter-Hammer, Square D and GE as crane brake manufacturers. (Weiss Dep 4/8/11 p. 40). As a rigger he worked on cranes almost every day, but did not know what brand of brakes were removed, nor specifically who manufactured them. (Weiss Dep 4/8/11 p. 41; Weiss Dep 4/8/11 p. 73; Weiss Dep 11/29/11 p. 248) He did say installing new brakes on cranes created lots of dust, but could not tell if it was from the new brake linings. (Weiss Dep 4/8/11 p. 73).

Weiss testified as a rigger there were times when Haldaman built scaffolding for him, but could not say how often this occurred. (Weiss Dep 11/29/11 p. 28-29, 40). He just said "regularly." (Weiss Dep 11/29/11 p. 29). When a trade was on the scaffolding, carpenters would be on or below ensuring it stayed up. (Weiss Dep 11/29/11 p. 40). He recalled working with Morgan, Reading, and P&H cranes but did not know whose brakes were installed on them. (Weiss Dep 11/29/11 p. 40, 252). He could not recount a particular job involving Haldaman and a specific brake manufacturer. (Weiss Dep 11/29/11 p. 252). With regard to Westinghouse, Weiss could not recall any particular job where its brakes were used in Haldaman's presence. (Weiss Dep 11/29/11 p. 253-254). With regard to Culter-Hammer, Weiss testified he could not say with any specificity who manufactured brakes at a given time. (Weiss Dep 11/29/11 p. 248).

Plaintiff attached the deposition of Theodore Potteiger. Nowhere does he refer to Haldaman. Plaintiff attached the deposition of Anthony Lubenesky. Nowhere does he refer to Haldaman. Plaintiff attached the deposition of Thomas Jones. Nowhere does he refer to Haldaman. Plaintiff attached the deposition of John Wagner. Wagner testified to working with Tony Lubenesky (Wagner dep p. 40). However, nowhere does he refer to Haldaman.

Potteiger, Lubenesky, Jones and Wagner all worked at Bethlehem Steel and may have been exposed to asbestos there. Yet, they do not testify about working with Haldaman and do not place him where exposure could have occurred. Plaintiff must prove more than asbestos' presence in the workplace; he must also prove proximity. *Eckenrod v. GAF Corporation.* 544 A. 2d 50, 52 (Pa Super 1988). Thus we rely mainly on Weiss' testimony and provided documentation.

3

In these summary judgment decisions We addressed each defendant's arguments and evi( )ce individually. The above outlined evidence was attached to Plaintiff's summary judgment responses. In the following discussion We address and analyze any each Defendant in turn.

## II.    DISCUSSION

"In determining whether to grant a motion for summary judgment, the trial court must view the records in the light most favorable to the non-moving party and resolve any doubts as to the existence of a genuine issue of material fact against the moving party." *Burger v. Owens Illinois, Inc.*, 966 A.2d 611, 614 (Pa. Super. 2009).

The Superior Court of Pennsylvania set forth elements necessary to prove a prima facie case of asbestos liability.

"…[P]laintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must establish evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product." *Eckenrod v. GAF Corporation.* 544 A.2d 50, 52 (Pa Super 1988).

Our Supreme Court reiterated a lower court's duty when reviewing asbestos summary judgment.

". . . [W]e believe that it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." *Gregg v. VJ Auto Parts Co.*, 943 A.2d 216 (Pa 2007).

Plaintiff must have been regularly in proximity to specific products and said contact should create a reasonable inference he inhaled asbestos fibers. *Samarin v. GAF Corporation.* 571 A.2d 398, (Pa Super 1989). As already stated, Plaintiff must establish more than asbestos presence in the workplace; he must prove proximity to the product's use. *Junge v. Garlock, Inc.*, 629 A.2d 1027, 1029 (Pa Super 1993) *citing Eckenrod v. GAF Corp.*, 544 A.2d 50, 53 (Pa Super 1988) *See also Gross v.*

4

*Johns-Manville Corp.*, 410 Pa.Super. 486, 600 A.2d 558 (1991); *Godlewski v. Pars Mfg. Co.,* 40 Pa.Super. 425, 597 A.2d 106 (1991). The principles of frequency, regularity and proximity apply to all asbestos cases regardless of whether evidence is direct or circumstantial. *Gregg,* supra.

Plaintiff identified CBS Corporation, Eaton Corporation and General Electric Company as manufacturing asbestos containing brakes. With regard to CBS, Plaintiff fails to provide evidence her husband was frequently and regularly in proximity to others working with respirable asbestos from a Westinghouse product. Weiss listed Westinghouse as a common brand used at Bethlehem Steel but could not say if Haldaman was present when its brakes were used. Viewing Weiss' testimony in a light most favorable, we can infer changing Westinghouse brakes created dust. However there is no evidence Haldaman was exposed to said dust. Thus there is no evidence he brought dust from Defendant's product home to his wife.

Even if We assume Haldaman was frequently, regularly and proximately exposed, there is no evidence the brakes contained asbestos. In addition to depositions Plaintiff attached a document dated 9/23/93 labeled Westinghouse Ans Inter. (Exhibit G to Plaintiff's Answer). The document lists "brakes for motors, bridge hoists, cranes and other industrial equipment" among products that "may have contained some amount of asbestos at some point in time." (Id p. 13). We do not know if these are the same brakes Haldaman was allegedly near. Weiss stated he was told the brakes contained asbestos but does not say by whom. Thus there is no evidence the brakes contained asbestos.

With regard to General Electric Company and Eaton Corporation, Plaintiff fails to provide evidence of frequent, regular and proximate exposure. In addition to depositions, Plaintiff attached GE's interrogatory answers. GE admitted it was not unusual for an end user to replace asbestos containing brake lining originally obtained from GE. They admitted GE would supply replacement brake linings

5

manufactured by third parties if requested. (Exhibit I, Plaintiff's Answer to General Electric's M  )n for Summary Judgment p. 7). Plaintiff attached Eaton Corp's interrogatory answers where it admits to selling asbestos containing brake lining and clutch components. (Exhibit G, Plaintiff's Answer to Eaton Corp's Motion for Summary Judgment p.6).

Assuming the brakes contained asbestos, Plaintiff still fails to prove frequent, regular and proximate exposure. Like Westinghouse, Weiss listed General Electric as a common brand used at Bethlehem Steel but could not say if Haldaman was present when that particular brand was used. Viewing Weiss' testimony in a light most favorable, we can infer changing brakes created dust. However there is no evidence Haldaman was exposed to said dust. Thus there is no evidence he brought dust from Defendant's product home to his wife. For the foregoing reasons, this Court respectfully requests Our orders granting summary judgment to CBS Corporation, Eaton Corporation and General Electric Company be affirmed.

Weiss identified Reading Crane, Morgan Engineering and P&H Mining Equipment as crane manufacturers. Weiss testified he recalled seeing Haldaman working near a Reading crane while brakes were being changed, but could not say when this occurred. (Weiss Dep 11/29/11 p. 42-45). He again named General Electric, Cutler Hammer, Square D, Westinghouse and General Electric as brake manufacturers generally (discussed above) but could not say which brand was used on Reading cranes. (Weiss Dep 11/29/11 p. 47). Reading admits it sold cranes to Bethlehem Steel with asbestos containing component parts. (Exhibit H, Plaintiff's Answer to Reading Crane's Motion for Summary Judgment p. 9-10). These component parts included brake linings, wire coatings, electrical panels and cab flooring materials. (Id p. 10). There is no evidence Haldaman was exposed to those original parts. Weiss identified personally using Rockbestos wire on Reading cranes. He believed Rockbestos wire contained asbestos because it was stamped there. (Weiss Dep 4/8/11 p. 40). However, Weiss never said Haldaman

was present at these times. (Weiss Dep 4/8/11 p. 87). Again, Plaintiff only provides evidence as los was generally present. There is no evidence Haldaman was regularly and proximately exposed to asbestos from Reading cranes.

With regard to Morgan, Plaintiff fails to provide evidence of frequent, regular and proximate asbestos exposure to Morgan cranes. Weiss testified Morgan cranes were located in the hot metal shop and Haldaman was present around them. (Weiss Dep 11/29/11 p. 201-202). However, Weiss could not specifically recall working with Haldaman near a Morgan crane. He could only say Morgan was a type of crane used. (Weiss Dep 11/29/11 p. 40-41). Weiss believed Morgan crane brakes and wiring contained asbestos. (Weiss Dep 11/29/11 p. 211). Plaintiff attaches its interrogatory answers in which Morgan admits some cranes may have contained asbestos containing components, including Cutler-Hammer brakes. (Exhibit H, Plaintiff's Answer to Morgan Engineering's Motion for Summary Judgment p.7). Plaintiff also attached Eaton's interrogatory answers, presumably as evidence crane brakes generally contained asbestos. (Exhibit I, Plaintiff's Answer to Morgan Engineering's Motion for Summary Judgment). Plaintiff points to the previously discussed brake testimony for exposure proof. Specifically to Morgan, Weiss stated unless the brakes were original he would not know if Morgan supplied them. (Weiss Dep 11/29/11 p. 211). He did not know what brand was removed from the cranes. (Weiss Dep 11/29/11 p. 255). Plaintiff provided no exposure evidence of asbestos containing wire manufactured or supplied by Morgan Engineering.

Last, Plaintiff alleges asbestos exposure to brakes and wiring used on P&H Mining Cranes. (Weiss Dep 11/29/11 p. 198). In addition to the above testimony, Plaintiff attaches P&H Mining's interrogatory answers. (Exhibit H, Plaintiff's Answer to P&H Mining's Motion for Summary Judgment). P&H admits purchasing a company that may have manufactured cranes with asbestos component parts. (Id p. 10). P&H then admits it sold "equipment" which may have also incorporated

7

other manufacturers' component or replacement parts. (Id p. 11). These parts included brake lining arc chutes and Rockbestos AVC cable used in larger cranes. (Id p. 11, 13). Plaintiff attaches the deposition in an unrelated case of Brian Gaugler. (Exhibit J, Plaintiff's Answer to P&H Mining's Motion for Summary Judgment). This witness does not mention Haldaman and is in no way connected to him except both worked at Bethlehem Steel. Plaintiff attaches the deposition in an unrelated case of Michael Carl. (Exhibit K, Plaintiff's Answer to P&H Mining's Motion for Summary Judgment). Again this witness does not mention Haldaman and is in no way connected to him except both worked at Bethlehem Steel.

Plaintiff again fails to present evidence of frequent, regular and proximate asbestos exposure to P&H Mining cranes. Plaintiff points to the same testimony regarding Rockbestos wire Weiss provided for Reading cranes. While Weiss identified using Rockbestos wire personally, he never puts Haldaman near him. Plaintiff's alleged crane exposure is limited to incorporated brakes and wire. As discussed above, Plaintiff fails to present exposure evidence to crane brakes. With one exception, all of Plaintiff's "product identification" witnesses never even mention Haldaman. While its likely asbestos was present in Haldaman's workplace, his witness can not say which manufacturer's brakes were used at any given time. Weiss, for example does not have one specific recollection of Haldaman working near a given Defendant's product. He can only state which products were present generally. While Plaintiff may have proven asbestos' presence in the workplace, she cannot put Haldaman near respirable asbestos fibers from an identified product on a frequent and regular basis. The same deficiencies exist with alleged exposure to asbestos wire. For the foregoing reasons, this Court respectfully requests Our orders granting summary judgment to Reading Crane, Morgan Engineering and P&H Mining Equipment be affirmed.

In addition to crane and brake exposure, Plaintiff alleges exposure to Kentile tile. Weiss testified Haldaman worked with Kentile floor tiles and that he personally removed and installed Kentile them frequently and regularly. (Weiss Dep. 11/29/11 p. 34). Weiss testified he and Haldaman "worked a lot of tile together" but could only specifically recall working with him on two or three flooring jobs in 1973 and 1974.. (Weiss Dep. 11/29/11 p. 233, 238-239). Each job took less than a week to complete. He saw Kentile written on the tiles and boxes. (Weiss Dep. 11/29/11 p. 222-223, 228, 234). The tile was cut to fit around edges or obstructions with a tool like a papercutter. (Weiss Dep. 11/29/11 p. 226-227). He did not know the tile's composition, but was told by supervisors it contained asbestos. (Weiss Dep. 11/29/11 p. 229-230, 236). He knew the removed tile was Kentile because they were replacing it with the same product and what he installed looked like what he removed. (Weiss Dep. 11/29/11 p. 233-234) He only recalled using Kentile and Flintkote tiles. (Weiss Dep. 11/29/11 p. 20). Weiss testified once he removed the old tile, he had to clean up all the dust before installing new tile. (Weiss Dep 11/29/11 p. 224-225).

Weiss testified he worked with Joseph Anfuso and Anfuso worked around Haldaman. (Weiss Dep 4/8/11 p. 20-22, 27). Plaintiff attaches Anfuso's affidavit in which he indicates working with Haldaman who had similar exposure (Exhibit E, Plaintiff's Answer to Kentile's Motion for Summary Judgment). At his deposition, Anfuso testified to working with "Kent" tile. (Anfuso Dep 9/25/03 p. 24). Plaintiff attaches Kentile's interrogatory answers in which it admits manufacturing asbestos containing tile. (Exhibit B, Plaintiff's Answer to Kentile's Motion for Summary Judgment p. 5).

Plaintiff stated she washed her husband's clothes once a week. Plaintiff's co-worker could only recall a few occasions where he and Haldaman worked with Kentile tile. Each job lasted about a week. Thus there is only evidence of two to four occasions when Plaintiff could have been exposed to asbestos dust from Haldaman's work clothes. This does not amount to frequent or regular exposure.

9

## III. CONCLUSION

For the foregoing reasons, this Court respectfully requests Our orders granting summary judgment to CBS Corp. f/k/a Westinghouse Electric Corp., Eaton Corp. as successor in interest to Cutler-Hammer Inc., Morgan Engineering f/k/a Morgan Crane, General Electric Co., Reading Crane & Engineering, Kentile Floors Inc., and P&H Mining Equipment f/k/a Harnischfeger Corp. be affirmed.

BY THE COURT:

Sandra Mazer Moss, J.

10